UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DONNA M.,

        Plaintiff,

        v.

ANDREW M. SAUL, Commissioner of Social Security Administration,

        Defendant.

Case No. ED CV 18-2554-SP

MEMORANDUM OPINION AND ORDER

## I.

## **INTRODUCTION**

On December 5, 2018, plaintiff Donna M. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). The parties have fully briefed the issues in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two disputed issues for decision: (1) whether the Administrative Law Judge ("ALJ") properly considered the opinion of a

consultative examiner, Dr. Jeff Altman; and (2) whether the ALJ properly rejected plaintiff's testimony. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 4-10; Defendant's Memorandum in Support of Answer ("D. Mem.") at 1-10.

Having carefully studied the parties' memoranda on the issues in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ failed to properly consider a portion of Dr. Altman's opinion, but properly rejected plaintiff's testimony. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was 50 years old on the amended alleged disability onset date, has a high school education. AR at 131, 134. Plaintiff has past relevant work as a merchandise displayer. *Id.* at 146.

On March 8, 2015, plaintiff filed an application for a period of disability and DIB.[1] *Id.* at 150. Plaintiff initially alleged an onset date of November 9, 2010 based on hereditary heart disease, high blood pressure, disc degeneration narrowing, and chronic arthritis. *Id.* At the hearing, plaintiff amended the onset date to April 14, 2011. *Id.* at 131. The Commissioner denied plaintiff's application initially and upon reconsideration, after which she filed a request for a hearing. *Id.* at 177-88.

On November 14, 2017, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 128-49. The ALJ also heard testimony

---

[1] Plaintiff previously filed an application for supplemental security income ("SSI") that was denied because her income was too high. AR at 165-76. The denial of plaintiff's SSI application is not at issue in this matter.

2

from Sandra Fioretti, a vocational expert. *Id*. at 145-49. On April 3, 2018, the ALJ denied plaintiff's claim for benefits. *Id*. at 23-32.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff did not engage in substantial gainful activity from November 9, 2010, the initial alleged onset date, through December 31, 2014, the date last insured. *Id*. at 26.

At step two, the ALJ found plaintiff suffered from the severe impairments of mild lumbar degenerative disc disease and status post right total knee replacement. *Id.* At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id*. at 27.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[2] and determined that through the date last insured, she had the RFC to perform light work,[3] with the limitations that she could: lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for six hours in an eight-hour day; sit for six hours in an eight-hour day; and frequently climb, balance, stoop, kneel, crouch, and crawl. *Id.* at 28. The ALJ precluded plaintiff from concentrated exposure to fumes, dusts, gases, odors, and hazards. *Id.*

The ALJ found, at step four, that through the date last insured plaintiff was

---

[2] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Social Security Ruling ("SSR") 83-10.

3

unable to perform her past relevant work as a merchandise displayer. *Id.* at 30.

At step five, the ALJ determined that given plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including hand packager inspector, cashier, and office helper. *Id.* at 31-32. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 32.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-6. The ALJ's decision stands as the final decision of the Commissioner.

## III.
## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole,

"weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

### A.   The ALJ Failed to Properly Consider Dr. Altman's Opinion

Plaintiff argues the ALJ improperly failed to consider a portion of the opinion of Dr. Jeff Altman, a consultative orthopedist, in determining plaintiff's RFC. P. Mem. at 4-6. Specifically, plaintiff argues the ALJ improperly rejected the following limitations opined by Dr. Altman without providing any reason: (1) plaintiff could stand or walk up to four hours in an eight-hour workday; (2) plaintiff could bend, crouch, kneel, crawl, or stoop only occasionally; and (3) plaintiff could only frequently perform gross and fine manipulation. *Id.*

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. § 404.1527(b).[4] In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 404.157(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining

---

[4]   All citations to the Code of Federal Regulations refer to regulations applicable to claims filed before March 27, 2017.

5

physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nonetheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

1. **<u>Treatment History</u>**

Plaintiff's medical records reflect that she was treated by various physicians at Beaver Medical Group, including Dr. Michael Wilson, an internist, from March 2005 through March 2017. *See* AR at 37-127, 342-597. No physician from Beaver Medical Group provided an opinion on plaintiff's RFC.

Plaintiff has a history of various conditions; only those which are pertinent to plaintiff's arguments are discussed here. These conditions include: lumbar back pain (onset date of December 12, 2014); degenerative joint disease (onset date not listed); bilateral knee pain (onset date of September 10, 2015); and a total right

knee replacement (onset date of September 10, 2015). *Id.* at 442-46, 448-98, 517-34, 548-52.

Plaintiff has lumbar back pain that her treatment notes list as having an onset date of December 12, 2014. *See, e.g., id.* at 404, 423, 443, 448, 456, 485-90. An x-ray of plaintiff's spine taken on December 12, 2014 revealed minimal multilevel degenerative disc disease changes in the lumbar spine, mild osteoarthritis of the left sacroiliac joint, multilevel facet hypertrophy and ligamentum flavum hypertrophy of the lumbar spine. *Id.* at 423, 464, 500. Plaintiff was diagnosed with unspecified back pain and lumbar disc degeneration. *Id.* at 487, 494. Plaintiff received some physical therapy but reported being unable to continue it because of financial reasons. *Id.* at 423. Plaintiff has also been recommended to use heat, stretching, gentle massage, regular exercise, and weight loss to alleviate her back pain. *Id.* at 348-50, 458, 495. An MRI of plaintiff's lumbar spine on April 23, 2017 indicated multilevel facet hypertrophy and ligamentum flavum hypertrophy of the lumbar spine. *Id.* at 500-03.

Plaintiff had a total replacement of her right knee on August 25, 2009, and after experiencing pain and stiffness after the surgery, had a subsequent surgery to revise her femoral component on November 9, 2010. *Id.* at 584-90. Plaintiff reported having an overall improved range of motion after the revision, but remained concerned about still having an small decreased range of motion. *Id.* at 591. X-rays of plaintiff's knees taken in September 2014 indicated that there were no acute abnormalities, but showed arthritis in the left knee and intact right knee hardware. *Id.* at 453.

**2.     Medical Opinions**

State agency physicians Dr. J. Hartman, an opthamologist, and Dr. Leonard H. Naiman, an internist, reviewed plaintiff's medical records and opined plaintiff was not disabled because there was insufficient evidence in the file to fully

7

evaluate her claim. *Id.* at 150-55, 157-63. The state agency physicians did not opine on plaintiff's RFC.

A consultative examiner, Dr. Jeff Altman, an orthopedist, examined plaintiff on December 11, 2017 and reviewed her medical records. *Id.* at 605-17. In plaintiff's general orthopedic examination, Dr. Altman observed that plaintiff's gait had normal cadence and velocity without signs of limp or antalgia, claimant was able to sit in a chair comfortably without tilt, was able to rise from a sitting or supine position without difficulty, and did not have any assistive device or bracing for walking. *Id.* at 614. As for plaintiff's thoracolumbar spine, Dr. Altman observed plaintiff had flexion to 75 degrees, extension and bends were within normal limits, there was mild tenderness in the L5-S1 junction and lower paraspinals, a 90/90 straight leg raise test in the sitting position and 60 degrees in the supine position. *Id.* Examinations of plaintiff's right and left upper extremities showed normal results, with the exception that Dr. Altman observed a dorsal scar on plaintiff's right wrist, and plaintiff achieved a range of motion in her right wrist without much pain. *Id.* at 614-15. As for plaintiff's right knee, Dr. Altman observed plaintiff had a surgical scar on her right knee compatible with a right knee replacement, had a range of motion 0 to 90 degrees, and mild tenderness along the medial and lateral joint lines. *Id.* at 615. Examinations of plaintiff's left knee, hips, ankles, and feet indicated normal results. *Id.* at 615-16.

Based on the examination, review of records, and history, Dr. Altman diagnosed plaintiff with status post right knee replacement and revision, and a history of right wrist fracture. *Id.* at 617. Dr. Altman opined plaintiff was capable of: lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing and walking for four hours out of an eight-hour workday; sitting for six hours out of an eight-hour workday; occasionally bending, crouching, kneeling, crawling, or stooping; occasionally climbing, balancing, walking on uneven terrain, or working

8

at heights; and unlimited use of her left hand and frequent use of her right hand for fine and gross manipulation. *Id.* Dr. Altman noted plaintiff had no overhead restrictions, and no assistive device is needed for ambulation. *Id.*

### 3. The ALJ's Findings

The ALJ determined plaintiff had the RFC to perform light work with the limitations that plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for six hours in an eight-hour day; sit for six hours in an eight-hour day; frequently climb, balance, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to fumes, dusts, gases, odors, and hazards. *Id.* at 28. In reaching his RFC determination, the ALJ stated he gave great weight to the opinions of Dr. Hartman, Dr. Naiman, and Dr. Altman. *Id.* at 30. The ALJ found Dr. Hartman and Dr. Naiman's opinions that there was insufficient evidence to determine plaintiff's functional capacity were consistent with the ALJ's finding that plaintiff's physical impairments do not preclude her from performing regular and continuous work activity at the light exertional level. *Id.* As for Dr. Altman's opinion, the ALJ noted Dr. Altman's opined limitations were consistent with the medical evidence showing that plaintiff retains the functional capacity to perform light work. *Id.*

Plaintiff contends the ALJ erred by stating he gave Dr. Altman's opinion great weight, but implicitly rejecting parts of Dr. Altman's opinion without providing any explanation. P. Mem. at 4-6. Plaintiff argues the ALJ failed to provide any reason for rejecting Dr. Altman's opinions about plaintiff's ability to stand and walk for only four hours in a workday, only occasionally bend, crouch, kneel, crawl, or stoop, and only frequently perform gross and fine manipulation, and that this failure to give a reason to reject these opinions is legal error. *Id.* at 5. The court agrees.

An ALJ must consider opinions from medical sources, but is not required to

9

adopt verbatim a medical opinion because the RFC determination is ultimately reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e) ("[T]he final responsibility for deciding these issues is reserved to the Commissioner."). But "to reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 830-31).

The ALJ here identified plaintiff's lumbar pain and right knee pain as mild based on examination notes and conservative treatment regimens. *See* AR at 27-29 (back pain treated by medication, physical examinations show normal results, and little evidence of further treatment for plaintiff's right knee since 2010). Additionally, the ALJ stated that he assessed plaintiff as being capable of performing a modified range of light work because the "laboratory diagnostic pathology reveals mild degenerative issues, [but] does not appear to be severe to warrant more than a conservative course of treatment as evidenced by the records" and "the nature and scope of the claimant's treatment does not reflect an intensity or frequency of symptom exacerbation or suggest an inability to sustain regular and continuous work." *Id.* at 30. But the ALJ did not provide any explanation as to why he implicitly rejected Dr. Altman's opinion that plaintiff is only capable of standing or walking for up to four hours, able to only occasionally bend, crouch, kneel, crawl, and stoop, and is frequently but not always capable of performing gross and fine manipulation with her right hand.

Defendant argues even if the ALJ erred by failing to provide reasons for rejecting some parts of Dr. Altman's opinion, such error was harmless because plaintiff could likely perform the jobs identified by the vocational expert even with Dr. Altman's more restrictive limitations. D. Mem. at 3-5. Defendant argues the DOT job descriptions for inspector/hand packager, cashier II, and office helper

"sugges[t] that Plaintiff could perform these jobs even if she were limited to four hours of standing and walking, as Dr. Altman opined." *Id.* at 4. Defendant further argues one of these jobs – inspector/hand packager – would alone satisfy the Commissioner's requirement at step five because "nothing in this job description suggests that the job cannot be performed by a person limited to four hours of standing and walking a day." *Id.* at 5. Such a conclusion is speculative. Indeed, the hypotheticals posed by the ALJ to the vocational expert did not address how the limitations identified by Dr. Altman would affect plaintiff's ability to perform these jobs, and it is unclear how these limitations would have affected the vocational expert's testimony.

In sum, the ALJ failed to properly consider Dr. Altman's opinion, and the court cannot say this error was harmless.

**B.** **The ALJ Provided Clear and Convincing Reasons for Discounting Plaintiff's Subjective Complaints**

Plaintiff contends the ALJ failed to properly consider her testimony. P. Mem. at 7-10. Specifically, plaintiff argues the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of her symptoms to the extent she claimed limitations that would restrict her from light work. *See* AR at 29-30.

An ALJ must make specific credibility findings, supported by the record. SSR 96-7p. To determine whether testimony concerning symptoms is credible, an ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, an ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about

the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281 (citation omitted); *accord Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). The ALJ may consider several factors in weighing a claimant's testimony, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

Contrary to plaintiff's argument, the ALJ here identified plaintiff's testimony he found to be not entirely credible:

> The claimant testified that she is not entirely functional due to her right knee pain which most recently has extended to the left knee. She testified that after both a knee replacement and revision surgery, her right knee still gets swollen and it is very painful, forcing her to elevate it and using ice and heat packs to alleviate the pain. The claimant testified that she experiences back pain requiring her to use a brace. Per the claimant's testimony, due to her impairments, she is unable to drive, sit, stand or walk for long.

AR at 28-29; *see Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (ALJ must identify which testimony she found not credible, and which evidence contradicts that testimony) (citing *Burrell*, 775 F.3d at 1138).

Then, at the first step, the ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 29. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's testimony. The ALJ provided three reasons for discounting plaintiff's testimony: (1) the objective medical evidence did not support plaintiff's

allegations; (2) plaintiff received conservative treatment for her back pain and no treatment for her right knee pain since her surgery; and (3) her alleged symptoms were inconsistent with her activities of daily living. *Id.* at 29.

The first reason the ALJ cited for finding plaintiff's testimony to be not entirely credible was that the medical evidence did not support plaintiff's allegations about the intensity, persistence, and limiting effects of her symptoms. *Id.* at 29; *see Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (lack of objective medical evidence is a factor the ALJ can consider in a credibility analysis). The ALJ noted that although records substantiate plaintiff's complaints of low back pain, plaintiff's imaging studies showed minimal or mild degenerative disc disease, osteoarthritis, multilevel facet hypertrophy, and hypertrophy of the lumbar spine. AR at 29, 404, 423, 448, 464, 490, 495. Physical examinations indicated that plaintiff's back was straight with no obvious scoliosis, she had no pain in the buttocks over the sciatic nerve, and her gait was normal with no signs of limp or antalgia. *Id.* at 29, 518, 614. Plaintiff's consultative examination by Dr. Altman also indicated plaintiff is able to sit in a chair comfortably without tilt, rise from a sitting and supine position without difficulty, exhibits no tenderness in the paraspinal muscle bilaterally, exhibits mild tenderness in the L5-S1 junction and lower paraspinals, and her straight leg raise test was 90/90 in the sitting position and 60 degrees in the supine position. *Id.* at 29, 614.

As for plaintiff's right knee pain, the ALJ found there was little evidence of treatment since her right knee replacement surgery in 2010, and although plaintiff complained of her pain limiting her ability to walk down hills, imaging studies of her right knee showed "intact right knee hardware." *Id.* at 29, 423, 453; *see id.* at 513-97. Plaintiff's consultative examination by Dr. Altman also indicated that plaintiff's knees had no scars, gross deformity, swelling, or warmth, and plaintiff exhibited a pain-free full range of motion, no tenderness on palpation along the

medial or lateral joint lines and her apprehension was negative. *Id.* at 29, 616.

Plaintiff argues the ALJ failed to consider additional evidence submitted to the Appeals Council indicating that she continued to have knee pain in 2011, and the ALJ is required to review plaintiff's record as a whole rather than a single snap shot from a single examination. But the additional evidence cited by plaintiff does not entirely support her assertion that she continued to have right knee pain in 2011. Plaintiff first cites a February 2011 examination by Dr. Wilson in which he noted that plaintiff's "pain is fine" and that plaintiff wanted a second opinion on a small decreased range of motion in her knee. *See id.* at 120. Plaintiff also cites a January 2014 examination by Dr. Wilson noting that plaintiff previously had a motor vehicle accident that "does lead to knee pain and back pain and this is why [plaintiff] is considering long-term disability." *Id.* at 365. But apart from this brief observation implying that plaintiff was experiencing knee and back pain in 2014, the treatment notes include no further explanation. *Id.* Indeed, the only change made to plaintiff's medication list during this examination was an additional prescription for her benign hypertension. *Id.*

Plaintiff's further argues that an x-ray of her right knee hardware would not reveal any swelling, pain, or tenderness. The court agrees an x-ray of plaintiff's knees would not necessarily capture any swelling, pain, or tenderness that would support her subjective symptom testimony. The ALJ also erred when he cited to portions of Dr. Altman's examination of plaintiff's left knee rather than her right knee. In examining plaintiff's right knee, Dr. Altman observed plaintiff had a surgical scar compatible with a right knee replacement, had a range of motion 0 to 90 degrees, and mild tenderness along the medial and lateral joint lines. *Id.* at 615. The ALJ thus incorrectly cited to an irrelevant portion of Dr. Altman's examination in discussing plaintiff's right knee limitations. Nonetheless, despite these two errors, there is substantial evidence in the record to support the ALJ's

finding that the objective medical evidence does not support the severity of plaintiff's claimed symptoms.

The ALJ cited a second reason for discounting plaintiff's testimony, that plaintiff received conservative treatment for her back pain and appears to have received no treatment for her right knee pain since her 2010 surgery. AR at 29. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citation omitted). Here, as the ALJ noted, the record indicates plaintiff was recommended physical therapy, analgesics, and home exercises to address her back pain. *See* AR at 29, 458, 495. This is fairly characterized as conservative treatment. *See Tommasetti*, 533 F.3d at 1040 (describing physical therapy and anti-inflammatory medication as conservative treatment); *see also Huizar v. Comm'r*, 428 Fed. Appx. 678, 680 (9th Cir. 2011) (finding that plaintiff responded favorably to conservative treatment, which included "the use of narcotic/opiate pain medications"). There are also no records showing further treatment for plaintiff's right knee pain after her surgery, and the additional evidence cited by plaintiff does not support her argument, as previously discussed. This second reason for discounting plaintiff's testimony is also clear and convincing.

The third reason cited by the ALJ for finding plaintiff's testimony less credible was that her alleged symptoms were inconsistent with her activities of daily living. *Id*. at 29; *see Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (in making a credibility determination, an ALJ may consider inconsistencies between a claimant's testimony and conduct). The ALJ found, and plaintiff testified, that plaintiff was able to perform activities of daily living such as "cleaning, doing laundry, doing light grocery shopping, and driving on occasion." AR at 29, 139-40.

Inconsistency between a claimant's alleged symptoms and her daily activities may be a clear and convincing reason to find a claimant's testimony less credible. *Tommasetti*, 533 F.3d at 1039; *Bunnell*, 947 F.2d at 346. But "the mere fact a [claimant] has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). A claimant does not need to be "utterly incapacitated." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Here, plaintiff's activities as reported at the hearing were not inconsistent with her alleged physical symptoms. At the hearing, plaintiff testified that she was unable to walk for more than an hour and could only sit for 30 minutes to an hour. AR at 138. Plaintiff also testified that she alternated some of her cleaning chores across different days because she would get too fatigued, her husband mostly cleaned the bathroom and kitchen, and she would usually go grocery shopping with her husband because she was unable to lift anything heavy. *Id.* at 139. The activities of daily living that plaintiff testified to were not inconsistent with her stated limitations, especially given that plaintiff testified she modified the activities to accommodate her alleged physical symptoms. Plaintiff's reported daily activities were therefore not a clear and convincing reason for discounting her subjective complaints.

Although the ALJ cited one reason that was not clear and convincing, the ALJ cited sufficient other reasons to find plaintiff's testimony less than entirely credible that were clear and convincing. Accordingly, the ALJ did not err in discounting plaintiff's subjective complaints.

## V.
## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, remand is required because it is unclear what the ALJ would have determined plaintiff's RFC to be had he properly considered Dr. Altman's opinion, or plaintiff all the limitations opined by Dr. Altman would have affected the vocational expert's testimony. On remand, the ALJ shall reconsider the opinion of Dr. Altman and either credit his medical opinion or provide legally sufficient reasons supported by substantial evidence for rejecting it. The ALJ shall then

reassess plaintiff's RFC, and proceed through steps four and five to determine what work, if any, plaintiff was capable of performing during the relevant period.

## VI.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: March 31, 2020

SHERI PYM
United States Magistrate Judge